IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ERNEST W. PHARR, III, *as Administrator of the Estate of Margaret Ann Pharr*, | |
| Plaintiff, | Case No. 3:12-cv-678-MEF (WO—Do Not Publish) |
| v. | |
| CHAPMAN HEALTH CARE CENTER, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION & ORDER**

**I. INTRODUCTION**

This case involves various state and federal claims made by Plaintiff Ernest W. Pharr, III ("Plaintiff"), the son of Margaret Ann Pharr ("Ms. Pharr") and the Administrator of her Estate. Plaintiff's claims arise from an accident Ms. Pharr suffered while she was being assisted in walking by Defendant Gwen Williams ("Williams") during her stay as a patient in a long-term care facility owned by Defendant Chapman Health Care Center ("Chapman"). Plaintiff filed a Complaint on August 8, 2012, asserting a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 794, as well as state law claims for negligence/wantonness; negligent hiring, supervision, and retention; strict liability; wrongful death; and vicarious liability. (Doc. #1.) On August 31, 2012, Defendants filed a Motion to Compel Arbitration, or in the

1

Alternative, Motion to Dismiss (Doc. #7), which is pending before the Court.

Having carefully considered the arguments and authorities offered in support of and in opposition to Defendants' motion, the Court finds that Defendants' motion is due to be GRANTED in part and DENIED in part, as set forth below.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (federal question), 1343(a) (civil rights), and 1367 (supplemental jurisdiction). The parties have not contested personal jurisdiction and venue, and the Court finds adequate allegations to support both.

## III. BACKGROUND

**A.     Ms. Pharr's Injury**

Ms. Pharr was twice admitted to Chapman's long-term care facility (the "Facility") for rehabilitation after undergoing a left hip replacement in the Spring of 2011. While at the Facility, Ms. Pharr was under a strict medical mandate that two people were to help her at all times when ambulating. On May 2, 2011, Williams, a Chapman employee, entered Ms. Pharr's room to assist her to a therapy session without the help of a second person. Despite Ms. Pharr's pleas that she was under a "two-person assist" requirement, Williams forced Ms. Pharr to stand, and Ms. Pharr fell immediately and broke her ankle. Ms. Pharr died on May 4, 2011, and her treating physician causally related her death to the fall that occurred two days earlier.

**B.     Ms. Pharr's Admission to the Facility and the Dispute Resolution Agreement**

Ms. Pharr was a resident at the Facility from March 18, 2011, to April 15, 2011, and from April 25, 2011, to May 2, 2011, the day of her accident. On March 21, 2011, Ms. Pharr's husband, Ernest W. Pharr, Jr. ("Mr. Pharr"), met with Melissa McManus ("McManus"), the Admissions Assistant at the Facility, to sign various documents concerning Ms. Pharr's stay, including a Dispute Resolution Agreement ("DRA") (Doc. #7-2, at 7–12); Mr. Pharr signed the DRA as Ms. Pharr's "Authorized Representative" (Doc. #7-2, at 12). According to the DRA, Mr. Pharr's signature as Ms. Pharr's Authorized Representative certified that he was "duly authorized by the Resident or otherwise to execute this Agreement and accept its terms." (Doc. #7-2, at 11.) Indeed, it was McManus's routine practice to present the DRA to residents or their apparent agents, such as Mr. Pharr, and to give them time to read it and to answer any questions they had about it. These steps were taken on the day Mr. Pharr signed the DRA as Ms. Pharr's Authorized Representative. (Doc. #7-2, at 3–4.)

The DRA contains a "Voluntary Agreement" provision that provides its execution "is not a precondition of admission to the Nursing Home or the furnishing of services to the Resident by the Facility" and that the DRA may be "rescinded by written notice to the Facility from the Resident within thirty days of signature." (Doc. #7-2, at 11.) The DRA further provides that "[i]f not rescinded within thirty days . . . [the DRA] shall remain in effect for all subsequent stays at the Nursing Home, even if the Resident is discharged from and readmitted to the Nursing Home." (Doc. #7-2, at 11.) Neither Ms. Pharr nor Mr. Pharr

rescinded the DRA within thirty days of Mr. Pharr signing it.

In addition to the DRA, Mr. Pharr also signed an Admission Agreement. The Admission Agreement states that it is a contract binding the "Resident," the "Resident Representative," and the "Facility," and that it may be executed by the Resident Representative on the adult Resident's behalf "because of a physical disability or mental incompetence." However, if the Resident Representative is to sign on behalf of the Resident, the Admission Agreement provides that the Resident Representative shall sign the document twice, once on his or her own behalf and once on behalf of the Resident.[1]  (Doc. #7-2, at 3.) Mr. Pharr signed the Admission Agreement once on his own behalf, but did not sign it on behalf of Ms. Pharr.  (Doc. #7-2, at 25.)  On the remainder of Ms. Pharr's admission paperwork,[2] Mr. Pharr signed as "Resident Representative,"[3] "Resident/Responsible Party," "Sponsor/or Resident," "Client or Responsible Person," and "Sponsor."  (Doc. #7-2, at 27–39.)

The DRA, the Admission Agreement, and the policies and rules set forth in the Handbook "are the entirety of the agreement between the Facility and you and your Resident Representative."  (Doc. #7-2, at 23.)

---

[1] This is in addition to a third signature block for Chapman, which is signed by Bob Jones, Assistant Administrator for the Facility.  (Doc. #7-2, at 25.)

[2] Indeed, all of Ms. Pharr's admission paperwork for her stay at Chapman was signed exclusively by Mr. Pharr.

[3] Apart from the DRA, the remainder of the admission paperwork is incorporated into the Admission Agreement and is treated as a single document.  Therefore, when Mr. Pharr signed other admission paperwork signed as "Resident Representative," he is not doing so *on behalf of* Ms. Pharr, but rather as her Resident Representative as defined in the Admission Agreement.

## IV. DISCUSSION

Defendants seek to compel arbitration of Plaintiff's claims based on the DRA, arguing that Mr. Pharr had actual or apparent authority to bind Ms. Pharr's estate. Plaintiff contends the opposite, arguing that Mr. Pharr did not have actual or apparent authority to bind Ms. Pharr's estate because he failed to sign the Admission Agreement on Ms. Pharr's behalf.

In *Carraway v. Beverly Enterprises Alabama, Inc.*, the Alabama Supreme Court held in a factually analogous case that a nursing home resident's brother had apparent authority to bind the resident (and her estate) to an arbitration agreement. 978 So. 2d 27 (Ala. 2007). The Court explained that apparent authority is "implied where the principal passively permits the agent to appear to a third person to have the authority to act on [her] behalf." *Id.* at 30 (quoting *Lawler Mobile Homes, Inc. v. Tarver*, 492 So. 2d 297, 304 (1986)). In this case, Defendants contend that Ms. Pharr did just that—she passively permitted Mr. Pharr to appear to the Facility staff to have authority to act on her behalf. *See Tenn. Health Mgmt., Inc. v. Johnson*, 49 So. 3d 175, 180 (Ala. 2010) (holding that a daughter–agent had apparent authority to bind her principal–mother when the mother "enjoyed the ease of checking into" a nursing home "under circumstances in which no reasonable person could consider the admission possible without the intervention of an agent to act on her behalf"). This is particularly true in a situation like Ms. Pharr's, where all of her admission paperwork was signed exclusively by her husband. In other words, in the absence of Ms. Pharr signing any documents herself, it is safe to conclude that she could not have reasonably expected to be

5

admitted into Chapman without intervention by someone, such as Mr. Pharr, on her behalf.

Plaintiff attempts to distinguish the facts of *Carraway* in an effort to show that Mr. Pharr lacked authority to bind Ms. Pharr's estate to the DRA.  Specifically, Plaintiff points out that both the arbitration agreement ***and*** the admission agreement in *Carraway* were admittedly signed by the brother–agent *on behalf of* the sister–principal.  978 So. 2d at 29–30.  Further, Plaintiff points out that there was evidence that the sister–principal later executed a durable power of attorney in her brother–agent's favor.  *Id.* at 30.  In Plaintiff's view, because Mr. Pharr did not sign the Admission Agreement on Ms. Pharr's behalf, and because there is no evidence that Mr. Pharr was conveyed authority to bind Ms. Pharr through a durable power of attorney or some other document of comparable legal force, this case is factually distinct from *Carraway* and cannot support a finding that Mr. Pharr had sufficient authority to bind Ms. Pharr to the DRA.

Plaintiff also attempts to distinguish the facts of the more recent and factually analogous case of *Johnson* to demonstrate Mr. Pharr's lack of authority to bind Ms. Pharr. 49 So. 3d 175.  Plaintiff emphasizes that, in *Johnson*, the daughter–agent signed an admission document *on behalf of* the mother–principal as "Legal representative," in addition to signing an arbitration agreement on her behalf.  *Id.* at 179.  Plaintiff contrasts this with the fact that the only document Mr. Pharr signed explicitly *on behalf of* Ms. Pharr was the DRA, and contending that Mr. Pharr's merely signing the DRA on behalf of Ms. Pharr without some other evidence of his Mr. Pharr's apparent authority on her behalf is not enough to bind

6

Ms. Pharr's estate to the DRA.

The Court is not persuaded by Plaintiff's arguments. While this case is factually distinguishable from *Carraway* and *Johnson* because Mr. Pharr did not sign all admission documents *on behalf of* Ms. Pharr, the Court finds that the one admission document that matters here—the DRA—was signed by Mr. Pharr on Ms. Pharr's behalf as her Authorized Representative. Mr. Pharr's apparent authority to act on Ms. Pharr's behalf is further supported by Ms. Pharr's acceptance, without objection, of Mr. Pharr's exclusive signing of all her admission paperwork. Accordingly, the Court finds that, based on the totality of the circumstances, Mr. Pharr had apparent authority to bind Ms. Pharr's estate to the DRA he signed as her "Authorized Representative," and this case is due to be arbitrated in accordance with the terms of the DRA.

## VI. Conclusion

Based on the foregoing, the Court hereby ORDERS that Defendants' motion (Doc. #7) is GRANTED IN PART and DENIED IN PART. The motion (Doc. #7) is GRANTED to the extent it seeks to compel arbitration of Plaintiff's claims against Defendants, and the parties are hereby ORDERED to submit all claims, controversies, and disputes between them as alleged in the Complaint (Doc. #1) to arbitration in accordance with the terms of the agreement between them. It is further ORDERED that this matter is STAYED pending the completion of arbitration pursuant to 9 U.S.C. § 3. Defendants' motion (Doc. #7) is DENIED to the extent it seeks dismissal of Plaintiff's claims against Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

It is further ORDERED that the parties shall file a jointly prepared report on the status of this case on or before September 24, 2013, and the parties shall thereafter file a jointly prepared report on the last Tuesday of every month until such time as the parties jointly stipulate that this action can be dismissed. The jointly prepared report shall indicate the status of the arbitration proceedings and the expected date those proceedings will be concluded.

Done this the 11th day of September, 2013.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE